UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLY COOK, et al.,

        Plaintiffs,                            Case No. 16-cv-14060

vs.                                                     HON. MARK A. GOLDSMITH

GREENLEAF TOWNSHIP, et al.,

        Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 40)

This matter is before the Court on Defendants Greenleaf Township, Judy Keller, Randall Schuette, Ken Brown, and Rosie Quinn's motion for partial summary judgment (Dkt. 40). The issues have been fully briefed, and a hearing was held on May 2, 2018. For the reasons stated below, the Court grants in part and denies in part Defendants' motion.

### I. BACKGROUND

Plaintiffs Shelly Cook and Christina Gibbard, residents of Greenleaf Township, are dedicated to staying informed about their local governance. Since 2015, with the exception of one meeting, both women have attended every Greenleaf Township board meeting and planning commission meeting that has been held. They have made a point to videotape each meeting, and have provided public comment on issues and proposals that are before the township.

This case concerns the events that took place during and after the township board meeting on October 18, 2016. The meeting was called in order to vote on a proposed settlement between Greenleaf and Kirk Winter, the township's former supervisor. Compl. ¶ 29 (Dkt. 1). Winter had been recalled from office after engaging in misconduct, and had sued the county for apparently

1

denying a license for his truck business. Id. ¶¶ 26-27. The meeting was not called by Rodney Lazure, the current township supervisor, and would only be permitted under state law if a majority of the township board called for the meeting in writing. Id. ¶ 16. Aware of this fact, Gibbard questioned the township clerk, Judy Keller, at the beginning of the meeting whether a majority of the board had signed a document calling the special township board meeting, and whether Lazure had been notified of this decision. Gibbard Dep., Ex. 2 to Defs. Mot., at 29 (Dkt. 40-1).

During the board meeting, Cook and Gibbard recorded the meeting with their video cameras. Id. at 27. They also gave public comment during the meeting, during which Gibbard questioned the propriety of the township's proposed settlement with Winter, and noted that the township was also facing a separate $70,000 lawsuit from another individual. Compl. ¶¶ 29-30. Plaintiffs both testified that they were not prevented from speaking or recording during the meeting. Gibbard Dep. at 28; Cook Dep., Ex. 1 to Defs. Mot., at 24-27 (Dkt. 40-1). After the meeting, as Gibbard was shutting off her camera, Keller told her to meet her in Keller's office, so that Keller could provide her with the document indicating that a majority of the board had called the October 18, 2016 meeting, and that they had notified Lazure of this decision. Gibbard Dep. at 35.

Gibbard testified that she followed Keller into her office, at which point Keller began berating her regarding the $70,000 lawsuit that Gibbard had mentioned during the board meeting. Id. Keller yelled that she was unaware of this lawsuit, and wanted Gibbard to tell her more about it. Id. Gibbard testified that as Keller was speaking, she took her video camera out of her purse, turned it on, and pointed it towards the ground so that she could record what was happening without putting the camera in Keller's face. Id. at 36. Gibbard testified that Keller "came up to me and pushed her breasts into my body." Id. at 35. The Court's review of Gibbard's recording indicates

2

that Keller stormed towards Gibbard and stood close to her; it is unclear from the video whether physical contact was made. Keller then informed Gibbard that she would not be giving her the document indicating that the majority of the board consented to the meeting, and that if Gibbard wanted it, she could file a request under Michigan's Freedom of Information Act. As Gibbard turned to leave, Quinn, the township treasurer, attempted to turn off Gibbard's camera. Id. at 36. Gibbard moved her camera out of the way and exited the office into what Gibbard described as the warehouse of the township hall. Id. at 42.

After Gibbard exited the office, Keller continued to yell at her, and ordered her out of the building. Id. at 42-43. The Court's review of Gibbard's recording indicates that Keller also exited the office into the warehouse, and began complaining that she had been accused of lying. Keller can be seen on the tape looking over at Gibbard and observe that she is being recorded, at which she points she runs at Gibbard and grabs the camera from her. Gibbard testified that she thought she was about to be taken to the ground, but that a man stepped between them. Id. at 43. Gibbard stated that Keller attempted to hit her as the man stood in the way. Id.

Cook heard the commotion and came out to see Keller charge at Gibbard, and also witnessed Keller's husband grab Gibbard's hand in an attempt to take the camera. Cook Dep. at 35. As the altercation between Gibbard and Keller's husband was occurring, Keller walked quickly towards Cook, told her to "shut that damn camera off" and then proceeded to turn "slap off" Cook's camera. Id. at 40.

Keller testified that she never physically touched the Plaintiffs, but acknowledged that she did attempt to shut off Gibbard's camera. Keller Dep., Ex. 6 to Pl. Resp., at 59-60 (Dkt. 43-7). She also acknowledged that she "aggressively approached both of them," and that she told a police officer that night that "it may have been assault." Id. at 59.

3

## II. STANDARD OF REVIEW

A court must grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making this determination, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." U.S. S.E.C. v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 327 (6th Cir. 2013). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). In considering the material facts in the record, a court must recognize that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 422. In this case, Defendant bears the burden of proving that any coverage under the policy is negated by an exclusion. Monteleone v. The Auto Club Grp., 113 F. Supp. 3d 950, 959 (E.D. Mich. 2015). "Where the moving party has the burden . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (citation and internal quotation marks omitted).

## III. ANALYSIS

Plaintiffs bring the following claims against Defendants: (i) First Amendment retaliation; (ii) assault and battery; (iii) violation of Michigan's Freedom of Information Act ("FOIA"), Mich. Comp. Laws § 15.240a; and (iv) violation of Michigan's Open Meetings Act ("OMA"), Mich. Comp. Laws § 15.261, et seq. In their motion, Defendants seek summary judgment on the First Amendment retaliation, FOIA, and OMA claims. The Court will address each in turn.

**A. First Amendment Retaliation**

Plaintiffs first argue that each of the individual Defendants committed acts of First Amendment retaliation against them.[1] "In the specific context of a § 1983 action, the non-moving party must demonstrate a genuine issue of material fact as to the following two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state law." Miller v. Calhoun Cty., 408 F.3d 803, 812 (6th Cir. 2005) (internal citation and quotations omitted).

Plaintiffs argue that the following actions were undertaken under color of state law in order to deprive them of their First Amendment rights: (i) Keller assaulted both Plaintiffs because of their statements during the October 18, 2016 meeting, their video recording, and because of Gibbard's request for documentation proving that a majority of the township board called the special meeting; (ii) Quinn attempted to stop Gibbard's recording while Gibbard was requesting the documentation; (iii) after the October 18, 2016 meeting, Schuette, a township official, recorded Gibbard in close proximity in an attempt to intimidate her, and also cut her off during other board meetings; and (iv) after the October 18, 2016 meeting, Brown, another township official, stated that neither Plaintiff was assaulted. He also stated that Gibbard was "rude" because she requested information from the board and spoke at meetings.[2]

---

[1] While the First Amendment retaliation claim was originally brought against Greenleaf Township, as well as the individual Defendants in both their official and personal capacities, Plaintiffs state in their response that they are withdrawing the claim against Greenleaf Township, and are no longer pursuing the claim against the individual Defendants in their official capacity. See Pls. Resp. at 12-13. Plaintiffs still claim that there is a genuine dispute of fact that the individual Defendants committed First Amendment retaliation in their personal capacity. As such, the Court only addresses whether there is a genuine dispute that the individual Defendants committed First Amendment retaliation against Plaintiffs in their personal capacity.

[2] Defendants also argue that the alleged failure of Brown, Schuette, and Quinn to aid Plaintiffs while they were being assaulted was not under color of state law. While Plaintiffs include this

5

**1. Under Color of State Law**

Defendants argue that the alleged deprivation of Plaintiffs' First Amendment rights were not caused by actions undertaken under color of state law. "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." Waters v. City of Morristown, TN, 242 F.3d 353, 359 (6th Cir. 2001). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (U.S. 1988) (internal citation and quotations omitted). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. at 49-50. In contrast, "a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." Waters, 242 F.3d at 359.

**a. Judy Keller**

There is sufficient evidence to create a genuinely disputed issue that Keller was acting under color of state law when she allegedly assaulted Gibbard and Cook. While the alleged assaults took place after the board meeting concluded, it began after Keller invited Gibbard into her township office and was precipitated by Keller's anger over Plaintiffs' recording of the meeting, Gibbard's request for township paperwork, and Gibbard's comments during the meeting

---

failure to act allegation in their complaint, they do not mention it in their response, and instead rely on other actions by Brown, Schuette, and Quinn as the basis for their First Amendment retaliation claim against those Defendants. Thus, the Court only considers whether these other actions were committed under color of state law, and if so, whether they state a claim.

6

regarding a lawsuit against the township. There is ample evidence that Keller, at the very least, was attempting to verbally and physically intimidate Plaintiffs from speaking at meetings, requesting public documents, and recording public proceedings. This intimidation took place in the township hall, while Plaintiffs were exercising their First Amendment rights. A reasonable jury could find that, by engaging in these actions, Keller "abuse[d] the position given to [her] by the State." West, 487 U.S. at 50; see also Doe v. Patton, 381 F. Supp. 2d 595, 598 (E.D. Ky. 2005) (holding that sexual assault was committed under color of state law where it was committed while at work and by virtue of the assailant's position). The Court holds that there is enough evidence to create a genuine dispute regarding whether Keller was acting under color of state law.

### b. Rosie Quinn

The Court also concludes that there is enough evidence for a reasonable jury to conclude that Quinn was acting under color of state law when she grabbed at Gibbard's video camera. She grabbed for Gibbard's camera while in a township office, in an attempt to stop Gibbard from recording a discussion with a public official regarding a lawsuit against the township and whether the board meeting was properly called — both matters of public concern. Quinn, as a member of the township board, attempted to physically stop Gibbard from engaging in protected First Amendment activity. There is enough evidence to conclude that this was done under color of state law.

### c. Randall Schuette

Cook testified that during an October 20, 2016 meeting of the township planning commission, two days after the alleged assault occurred, Gibbard was asking a question to the commission when Schuette, a township board member, went up next to Gibbard and began holding his video camera within inches of Gibbard's face. As the meeting adjourned, he allegedly pointed

7

at and taunted her. This is evidence that Schuette was abusing his position of authority during a public meeting in an attempt to silence Gibbard. This is enough evidence to conclude that Schuette was acting under color of state law. There is no real dispute that Schuette's alleged act of "cutting off" Gibbard while she was making public comment during other township meetings was done under color of state law.

### d. Kenneth Brown

Plaintiffs state in their response that, in board meetings following the events of October 18, 2016, Brown stated that Gibbard was not assaulted, and that Cook was "acting," when she claimed she was assaulted. He also allegedly stated that Gibbard was rude for requesting township documents, and for her comments during board meetings. Because these comments were made in his capacity as a township official, they were made under color of state law.

### 2. Deprivation of First Amendment Rights

In order to establish a First Amendment retaliation claim, the plaintiff must show "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

### a. Protected Conduct

In their briefing, Defendants do not contest that Gibbard and Cook were engaging in First Amendment conduct when they spoke at the board meeting, recorded the meeting, and petitioned the board for public documents. At oral argument, Defendants contended that Gibbard's verbal request at the October 18, 2016 for documents was not protected activity, because it was not made

8

in writing, as required by FOIA. Defendants have not provided any authority for this proposition. In any event, there is no dispute that by speaking and recording during meetings, Plaintiffs engaged in protected activity.

### b. Adverse Action

Defendants argue that their alleged behavior did not constitute an adverse action, because the behavior would not deter a person of ordinary firmness from engaging in future protected, First Amendment conduct. While the term "adverse action" originally involved actions taken against public employees, it has since been extended to cases involving both prisoners and "average citizen[s]". Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 724 (6th Cir. 2010). The Sixth Circuit has held that the analysis of whether an individual has suffered an adverse action "must be tailored to the circumstances such that prisoners might have to endure more than public employees, who in turn might have to endure more than the average citizen." Id. As average citizens, Gibbard and Cook need only present evidence to satisfy "the lower limit of a cognizable injury for a First Amendment retaliation claim." Id. Specifically, they must show that the alleged actions "would be sufficient to deter an average citizen from participating in public meetings and criticizing local officials." Id. The Court addresses each Defendant's actions in turn.

### i. Judy Keller

As noted above, Keller's alleged adverse actions are her assault and battery of Gibbard and Cook after they spoke at the meeting, recorded the meeting and its aftermath, and petitioned Keller for public documents. It is clear that inflicting physical harm on a citizen would deter her from engaging in future protected conduct. Courts have held that even the "threat of physical harm would without doubt deter an individual of ordinary firmness." Cantu v. Michigan Dep't of Corr., 653 F. Supp. 2d 726, 744 (E.D. Mich. 2009). Where Plaintiffs have provided evidence of an actual

9

assault and battery, there can be no doubt that they have established a question of fact regarding whether Keller engaged in adverse actions against them.[3]

### ii. Rosie Quinn

The same reasoning applies to Quinn's actions. Gibbard alleges that while she was recording her request to receive public documents from Keller, Quinn attempted to stop her by grabbing for her video camera. While not as severe as Keller's alleged assault, she still took physical action to stop Gibbard from engaging in legitimate First Amendment activity. Gibbard's testimony provides sufficient evidence that Quinn engaged in an adverse action.

### iii. Randall Schuette

Plaintiffs argue that "Plaintiff Gibbard was punished by Defendant Schuette for being critical of the Board's actions and videotaping when he sat within inches of her with his cellphone acting like he was videotaping her to teach her a lesson." They argue that this action would deter a person of ordinary firmness from engaging in future protected activity. Although mocking in nature, it cannot be said that such behavior rises to the level of an adverse action. While the adverse action bar is low for average citizens, the alleged action of Schuette, videotaping Gibbard in a mocking manner, constitutes a "merely de minimis act[] of harassment," Bell, 308 F.3d at 606, that is insufficient to establish a First Amendment retaliation claim. See Thaddeus-X, 175 F.3d at 398 (adverse action inquiry is meant to weed out "inconsequential actions"); see also Naucke v.

---

[3] Defendants argue that Keller did not engage in an adverse action because both Plaintiffs attended a board meeting two days after the alleged assaults. However, the Court's analysis of adverse action does not turn on Plaintiffs' actual response to Defendants' actions; the question is whether "a person of ordinary firmness" would be deterred by the defendant's conduct. See Bell v. Johnson, 308 F.3d 594, 606 (6th Cir. 2002) ("[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted."). Otherwise, individuals with greater than average fortitude could not vindicate their First Amendment rights. Plaintiffs' decision to attend future meetings despite Keller's conduct does not defeat their claim.

10

City of Park Hills, 284 F.3d 923, 928 (8th Cir. 2002) ("[O]ffensive, unprofessional, and inappropriate" actions and comments by city council members did not constitute adverse action for purposes of First Amendment retaliation claim). Similarly, it cannot be said that the allegation that Schuette cut off Gibbard from speaking at an October 24, 2016 meeting constitutes adverse action. While such an action may violate the OMA, as discussed infra, it would not deter a citizen of ordinary firmness from speaking out at future meetings. See Revell v. City of Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010) ("[A] few criticisms, admonishments, or verbal reprimands, do not rise to the level of" a First Amendment retaliation claim).

### iv. Kenneth Brown

Brown's comments at a subsequent meeting, that Plaintiffs were not actually assaulted, and that Gibbard's comments at meetings were rude, also do not constitute adverse action. Even viewing the evidence in the light most favorable to Plaintiffs, it appears that Brown was merely expressing his view on the aftermath of the October 18, 2016 meeting, and his opinion on Gibbard's public commentary. A public official expressing his views on a particular incident is not grounds for a First Amendment retaliation claim. As a result, Plaintiffs' First Amendment retaliation claim against Brown fails.

### c. Causal Connection

There can be no real dispute that the evidence introduced by Plaintiffs establishes that Keller's and Quinn's actions were "motivated at least in part" by Gibbard's and Cook's protected First Amendment activities. Thaddeus-X, 175 F.3d at 394. Gibbard's testimony, as well as her video recording of the incident, show that Keller was enraged by Gibbard's comments during the board meeting, her request for public documentation, and her recording of the same. Keller's alleged assault and battery were a direct response to Gibbard's conduct, as well as the same

conduct of Cook. See Diggs v. Balogun, No. 15-0535, 2017 WL 4921690, at *8 (D. Md. Oct. 31, 2017) (awareness of protected conduct and temporal proximity between activity and assault sufficient to establish causation).

The same goes for Quinn. A reasonable jury could conclude that her attempt to physically stop Gibbard from recording her interaction with Keller was motivated, at least in part, by Gibbard's comments at the meeting, request for documentation, and recording. As a result, Plaintiffs have established a prima facie case of First Amendment retaliation as to Keller and Quinn.

### 3. Qualified Immunity

Defendants argue that even if the actions of Keller and Quinn constituted First Amendment retaliation, they are entitled to qualified immunity because it was not clearly established that their actions were unconstitutional. "[T]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Middaugh v. City of Three Rivers, 684 F. App'x 522, 526 (6th Cir. 2017) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)). "[T]he court makes two inquiries when resolving qualified immunity claims: (1) whether the facts, viewed in the light most favorable to the plaintiff, show a violation of a constitutional right, and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct. Cochran v. Gilliam, 656 F.3d 300, 306 (6th Cir. 2011) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). These inquiries can be addressed in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Because the Court has already determined that a jury could find that Keller and Quinn violated Plaintiffs' First Amendment rights, it need only decide whether the rights violated were

12

clearly established at the time of the incident in question. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." D.C. v. Wesby, 138 S. Ct. 577, 589–590 (2018) (internal citations and quotations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. at 590. In other words, "[t]he rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202).

The Court is unaware of a case with our exact set of circumstances, i.e. where a Court found First Amendment retaliation where a citizen was physically assaulted after making comments critical of public officials, requesting public documents, and recording those same public officials. While the unlawfulness of the action "must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted,'" id., a plaintiff does not need to show that "the very action in question has previously been held unlawful" in order to defeat qualified immunity. Hope v. Pelzer, 536 U.S. 730, 739 (2002).

Fritz, while not identical to the present case, established that retaliating against citizens for voicing concern at township meetings was a First Amendment violation. Fritz did not involve a retaliatory assault; it held that a township official's phone calls disparaging the citizen to her boss constituted First Amendment retaliation. More apt is the line of prisoner cases that establish that a physical assault, or threat of assault, conducted in response to protected activity is a form of First Amendment retaliation. In Cantu, a prison guard was threatened and subsequently assaulted by a fellow guard after he reported a different coworker for misconduct. 653 F. Supp. 2d at 740. The

13

court held that these actions stated a claim for First Amendment retaliation. Id. at 744. In Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009), the Second Circuit held that a prisoner who alleged that he had been beaten by guards within six months of filing a lawsuit against them had presented a viable First Amendment retaliation claim. In Barrington v. New York, 806 F. Supp. 2d 730 (S.D.N.Y. 2011), the court held that the state was not entitled to summary judgment where the prisoner alleged that he was beaten by guards five days after filing a grievance. Id. at 748. These cases, taken together, put Keller and Quinn on notice that assaulting individuals for exercising their First Amendment rights is clearly unconstitutional. As a result, they are not entitled to qualified immunity.

### B. Freedom of Information Act

Defendants argue that Plaintiffs' claims brought under Michigan's Freedom of Information Act ("FOIA"), Mich. Comp. Laws § 15.240a, are both time-barred and moot, because Gibbard has been reimbursed for the amount she was allegedly overcharged for certain public documents, and received the document she requested regarding whether the October 18, 2016 board meeting was properly held. Gibbard acknowledged as much in her deposition, and Plaintiffs state in their response that dismissal of their FOIA claim is appropriate. As a result, the Court grants summary judgment to Defendants as to Plaintiffs' FOIA claim.

### C. Open Meetings Act

Finally, Defendants argue that Plaintiffs' claim brought under Michigan's Open Meetings Act ("OMA"), Mich. Comp. Laws 15.261, et seq., fails as a matter of law. "The purpose of the Act is to ensure that decisions are truly deliberated in public, and to prevent public meetings from merely rubber-stamping decisions already made in private." Jocham v. Tuscola Cty., 239 F. Supp. 2d 714, 729 (E.D. Mich. 2003). While individuals can be criminally prosecuted for violations of

14

the OMA, the act also creates a private right of action against "[a] public official who intentionally violates this act." Mich. Comp. Laws § 15.273(1). If found to have violated the act, the official "shall be personally liable in a civil action for actual and exemplary damages of not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." Id. "[I]ntentionally violating the OMA consists of three elements: (1) the defendant is a member of a public body, (2) the defendant actually violated the OMA in some fashion, and (3) the defendant intended to violate the OMA." People v. Whitney, 578 N.W.2d 329, 340 (Mich. Ct. App. 1998).

Plaintiffs argue that the OMA was intentionally violated in the following ways: (i) Brown stated at a meeting that Gibbard was rude for her comments made during board meetings; (ii) Cook was made fun of at a township board meeting by board members and by the audience; (iii) Gibbard was cut off at board meetings when attempting to speak; (iv) Keller accused Plaintiffs of disrupting meetings by videotaping them; (v) Keller stated that she wanted to get a personal protection order against Plaintiffs because of their videotaping; (vi) Keller attempted to physically turn off Plaintiffs' video cameras after the October 18, 2016 meeting; (vii) after the October 18, 2016 meeting, Cook felt afraid to speak or videotape board meetings; (viii) Schuette held his cellphone close to Gibbard during the October 20, 2016 board meeting in an attempt to mock her for her own taping of meetings; (ix) Schuette cut off Gibbard from speaking at the October 24, 2016 meeting, and during other meetings.

Plaintiffs have not identified which section of the OMA these actions violate. They instead list these incidents and argue "[b]ased on the above conduct by Defendants, the goal of the OMA was violated or at least a factual question exists whether it was violated. Accordingly, summary judgment on Plaintiff's [sic] OMA claim should be denied." Pls. Resp. at 23. The Court's review

of the OMA indicates that attendees of public meetings are entitled to the following pertinent rights (i) to videotape; and (ii) to address a meeting "under rules established and recorded by the public body." Mich. Comp. Laws § 15.263(1), (5). The Court will address each alleged violation of the OMA in turn.

Brown's comment that Gibbard was rude during her public comments did not prohibit Gibbard from speaking at open meetings. As a board member, he is entitled to express his opinion regarding comments made by meeting attendees. The same goes for the allegation that Keller and members of the meeting audience "made fun" of Cook while she was speaking at a meeting. After Cook gave her public comment during the October 18, 2016 meeting, Keller made a comment referencing that Cook is the sister-in-law of the township supervisor. Regardless of whether this comment was meant to embarrass Cook, it was made after she made her public comment. Cook conceded during her deposition that she was permitted to ask her question without interruption. Cook Dep. at 23. Because she was permitted to speak, there is no OMA violation.[4]

While Keller's statements regarding Plaintiffs' use of video cameras meetings did not interfere with their right to videotape meetings, her actions following the October 18, 2016 were designed to prevent Plaintiffs from videotaping any future meetings. Following the meeting, Keller attempted, on several occasions, to grab or break Plaintiffs' cameras in retaliation for recording. Although this conduct did not occur during the meeting, the conduct was designed to

---

[4] Gibbard also makes an allegation that on certain occasions prior to the October 18, 2016 meeting she had been "cut off." When asked if she was cut off after exceeding the allotted time set by the board for speaking, Gibbard testified "I'm not sure. I may think of that at another time and if I do I will clarify that." Gibbard Dep. at 24-25. Plaintiffs have not provided more regarding this general allegation that she had been cut off prior to the October 18, 2016 meeting. Without more information, it cannot be said that Gibbard has established a genuine dispute of material fact as to this allegation.

16

intimidate Plaintiffs from videotaping or speaking at any future public events, including open meetings.[5]

The final alleged OMA violations concern the actions of Schuette during board meetings on October 20, 2016, and October 24, 2016. Plaintiffs alleges that, during the October 20, 2016 meeting, Schuette went up to Gibbard while she was speaking and began recording her with his cellphone to mock her, and also cut her off from speaking. A reasonable jury could conclude that Schuette engaged in these actions in order to interfere with Gibbard's right to make public comment under the OMA. Gibbard's testimony makes clear that Schuette was not videotaping in order to have a record of the meeting; she indicated that he got close to her in order to bother and intimidate her while she was speaking, in retaliation for her own recording during other meetings. When asked if he recorded Gibbard to intimidate her, Schuette conceded that he did it "so she knows what it felt like, cause that's what she did in that office that night. I did it one time." Schuette Dep. at 26. This is evidence that Schuette was interrupting Gibbard's right to speak, a clear violation of the OMA. See Ritchie v. Coldwater Cmty. Sch., 947 F. Supp. 2d 791, 817 (W.D. Mich. 2013) (intentionally interrupting public comment constitutes an OMA violation).

With regard to the October 24, 2016 meeting, a reasonable jury could conclude that Schuette intentionally violated Gibbard's OMA rights by cutting her off during her public comment. In his deposition, Schuette conceded that, at the time of Gibbard's comment, the Greenleaf Board had not established a time limit on comments from the public. He claims that he told Gibbard that "we're done," because "Ms. Gibbard made her statement and then proceeded to start arguing, so then I cut her off." Schuette Dep. at 46. While it could be argued that Schuette

---

[5] Despite alleging that Quinn's action of attempting to shut off Gibbard's camera constitutes a First Amendment violation, Plaintiffs do not argue that this action also violated the OMA. As a result, the Court need not consider whether Quinn's actions violated the OMA.

17

was attempting to maintain order, it is just as likely, in light of his harassment of Gibbard just days prior, that he cut her off from finishing her public comment out of animus.  Whether Schuette's decision to prevent Gibbard from speaking further at the October 24, 2016 constituted an intentional violation of the OMA is a question of fact for the jury.  Ritchie, 947 F. Supp. 2d at 817.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion for partial summary judgment (Dkt. 40).  Defendants' motion is granted as to the First Amendment retaliation claims against Schuette and Brown, and denied as to the claims against Keller and Quinn.  Defendants' motion is granted as to the FOIA claim.  Finally, Defendants' motion is granted as to the OMA claim brought against Brown, and denied as to the OMA claims brought against Keller and Schuette.

SO ORDERED.

Dated: May 15, 2018          s/Mark A. Goldsmith
   Detroit, Michigan          MARK A. GOLDSMITH
                               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 15, 2018.

                                s/Karri Sandusky
                                Case Manager