UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLY COOK and
CHRISTINA GIBBARD,

    Plaintiffs,                                                    Case No. 16-14060

vs.                                                              HON. MARK A. GOLDSMITH

GREENLEAF TOWNSHIP, et al.,

    Defendants.
_____/

**OPINION & ORDER**
**GRANTING IN PART CHRISTINA GIBBARD'S MOTION FOR ATTORNEY FEES**
**(Dkt. 94) AND DENYING DEFENDANTS' MOTION FOR ATTORNEY FEES (Dkt. 96)**

This matter is before the Court on Plaintiff Christina Gibbard's motion for attorney fees (Dkt. 94) and Defendants Judy Keller, Randall Schuette, and Rosie Quinn's motion for attorney fees (Dkt. 96). This case was tried in December 2018 on Plaintiffs Shelly Cook's and Christina Gibbard's claims of First Amendment retaliation, assault and battery, and violations of Michigan's Open Meetings Act ("OMA"). The jury found in Plaintiffs' favor on the battery claims and in Gibbard's favor on the OMA claim. For the reasons discussed below, Gibbard's motion is granted in part and Defendants' motion is denied.

**I.    BACKGROUND**

The relevant background is set forth in full in this Court's prior opinion. See 5/15/2018 Op. & Order (Dkt. 45) (denying Defendants' motion for partial summary judgment). In brief summary, since 2015, Cook and Gibbard have attended nearly every Greenleaf Township board meeting and planning commission meeting that has been held. They have videotaped each meeting and have provided public comment on issues and proposals that are before the township. Keller

1

and Schuette took actions against Cook and Gibbard that gave rise to claims under the First Amendment and the OMA. The matter proceeded to trial, and a jury found that Keller and Schuette did not retaliate against Cook and Gibbard in violation of the First Amendment, but that they did violate Gibbard's rights under the OMA. The jury awarded Gibbard $250 in damages against Keller and Schuette respectively, for a total of $500. The parties have filed cross motions for attorney fees—Keller and Schuette because they prevailed on the First Amendment claims, and Gibbard because she prevailed on the OMA claim.

## II. LEGAL STANDARD

In the United States, under the "American Rule," each side in legal proceeding pays for its own attorney fees. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The American Rule, however, has numerous statutory exceptions, some, if not most, of which Congress has enacted to encourage private litigation to implement public policy. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 263 (1975). This private-attorney-general concept is often found in civil rights statutes. For example, in civil rights actions brought under 42 U.S.C. § 1983, courts are authorized to allow "the prevailing party" reasonable attorney fees as part of the costs. 42 U.S.C. § 1988(b). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792-793 (1989).

## III. DISCUSSION

There is no dispute that Defendants are the prevailing parties on the First Amendment claims and that Gibbard is the prevailing party on her OMA claims. However, as explained below, simply being a prevailing party does not necessarily allow for attorney fees. Gibbard is entitled to attorney fees; Defendants are not.

**A. Defendants' Motion (Dkt. 96)**

Defendants argue that as the prevailing parties on the First Amendment retaliation claims, they should be awarded attorney fees under § 1988. But awarding attorney fees to prevailing defendants is rare and reserved for particularly egregious cases, which this case is not.

Section 1988 does not distinguish between prevailing plaintiffs and prevailing defendants. Nonetheless, courts recognize that there is a dual standard. A prevailing plaintiff should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1968). This is so because "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest." Id. "Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals" to bring civil rights cases. Id.[1]

These same policy considerations, however, are not present for the prevailing defendant. Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 419 (1978). Prevailing defendants should recover fees only upon a finding that "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Id. at 421; accord Wayne v. Village of Sebring, 36 F.3d 517, 530 (6th Cir. 1994). While Congress wanted to clear the way for civil rights actions, it also wanted to protect defendants from frivolous

---

[1] Cases that interpret an attorney fees provision of one civil rights statute generally apply to the attorney fees provisions of all civil rights statutes, as they are all generally modeled on the fee-shifting provisions of the Civil Rights Act of 1964. The Supreme Court has noted "that fee-shifting statutes' similar language is a 'strong indication' that they are to be interpreted alike." Indep. Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 758 n.2 (1989).

litigation having no legal or factual basis. Christiansburg, 434 U.S. at 420. Accordingly, "[a]n award of attorney fees against a losing plaintiff in a civil rights action 'is an extreme sanction, and must be limited to truly egregious cases of misconduct.'" Riddle v. Egensperger, 266 F.3d 542, 547 (6th Cir. 2001) (quoting Jones v. Cont'l Corp., 789 F. 2d 1225, 1232 (6th Cir. 1986)).

Defendants argue that Gibbard's and Cook's First Amendment claims are textbook examples of frivolous, unreasonable, or without-foundation claims. Mot. at 9. They rely heavily on Wolfe v. Perry, 412 F.3d 707 (6th Cir. 2005), a case in which the Sixth Circuit upheld the award of attorney fees to the prevailing defendant. The Court finds the case inapposite.

In Wolfe, the plaintiff knew from the outset of the case that his Fourth Amendment claim that police had illegally searched his home was frivolous, because he neither owned nor resided at the home that was searched. Id. at 721. Even after the plaintiff admitted at his deposition that he neither owned nor resided at the home, he continued with his claim, which ultimately failed when the court granted defendants' motion for summary judgment. The Sixth Circuit found that the plaintiff's claim "was clearly defective at the outset of the case" and was the type of egregious claim warranting an attorney fees award to the prevailing defendant. That is not the case here.

Gibbard's and Cook's First Amendment retaliation claims had merit at the outset of this case. A retaliation claim against a person acting under state law has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

Here, Gibbard and Cook engaged in protected conduct by filming board meetings and making public comments. They provided testimony and video evidence that established that Quinn and Keller attempted to stop Gibbard from videotaping after the October 18, 2016 meeting. Trial Tr., Vol. 2, 77:6-8, Dec. 14, 2018 (Dkt. 100); see also 10/18/2016 Board Meeting Video, Pl. Trial Ex. 1; Trial Tr., Vol. 1, 82:19-20, 83:7, Dec. 13, 2018 (Dkt. 99). Shortly thereafter, Keller charged across the meeting hall and attempted to hit Cook's camera out of her hands. See 10/18/2016 Board Meeting Video, Pl. Trial Ex. 3. A few days later, Schuette physically intimidated Gibbard during a township meeting, 10/20/2016 Board Meeting Video, Pl. Trial Ex. 6, and both Keller and Schuette regularly prevented Gibbard from making public comments during board meetings. 8/15/2016 Board Meeting Video, Pl. Trial Ex. 9, at 19:55-20:15; 10/24/2016 Board Meeting Video, Pl. Trial Ex. 8. This is sufficient evidence from which to infer that Gibbard's and Cook's protected conduct motivated the adverse actions.

Gibbard and Cook did not ultimately persuade a jury that these actions amounted to First Amendment retaliation, but that does not mean that the claims were frivolous, unreasonable, or without foundation. Indeed, the Sixth Circuit has cautioned district courts to resist engaging in post hoc reasoning by concluding that "because a plaintiff did not ultimately prevail, h[er] action must have been unreasonable or without foundation." Christiansburg, 434 U.S. at 422. "This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." Id. Gibbard's and Cook's First Amendment retaliation claims were not clearly defective at the outset of the case, after depositions, or even after trial. Their claims are not the type of egregious claims that warrant an attorney fees award to the prevailing defendant. Accordingly, Defendants' motion for attorney fees is denied.

**B. Gibbard's Motion (Dkt. 94)**

Gibbard is seeking $142,695.50 in attorney fees and $4,717.06 in costs on her successful OMA claims. Defendants agree that Gibbard is entitled to attorney fees and costs under the OMA. They also agree that Plaintiffs' attorneys, Julie A. Gafkay and David A. Dobreff, are experienced and "formidable" attorneys, and that their respective hourly rates are reasonable. Defendants take issue, however, with the amount of the attorney fees requested in relation to the size of the recovery. They argue that attorney fees that are 284 times greater than the amount awarded is excessive.

Defendants make four arguments in opposition to Gibbard's motion: (i) the attorney fees request is unconstitutional; (ii) the fee request is disproportionate to the amount of the recovery under state law; (iii) Gibbard is seeking fees not related to her OMA claim, including fees related to Cook's unsuccessful claims; and (iv) Gibbard's bill of costs is excessive. The Court will take the arguments in turn.

**1. Disproportionate Fees Under the Fourteenth Amendment**

Defendants argue that Supreme Court precedent counsels against awarding attorney fees that are "exponentially" greater than the damage award. Resp. at 12-13 (citing BMW of N. Am. v. Gore, 517 U.S. 559, 583 (1996), State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003)). Defendants' argument misses the mark.

Gore involved a dispute between an automobile purchaser and BMW. A state jury awarded the plaintiff $4,000 in compensatory damages—and $4,000,000 in punitive damages—later reduced to $2,000,000 by the court. Id. at 564-567. The Supreme Court held that the punitive damages award (which was 500 times greater than the compensatory damages award) exceeded the constitutional limits of the Fourteenth Amendment's Due Process Clause, which prohibits

states from imposing "grossly excessive" punishment on a tortfeasor. Id. at 562. The Supreme Court was concerned with the "notions of fairness enshrined in our constitutional jurisprudence [that] dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty . . . ." Id. at 574. Because BMW did not receive adequate notice of the "magnitude of the sanction" it was facing, the Court found the punitive damages award grossly excessive. Id. at 572-575. In a subsequent case, the Supreme Court declined to impose a bright-line ratio, but observed that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003).

In reliance on Gore and State Farm, Defendants argue that a 5 to 1 ratio between attorney fees and compensatory damages would be reasonable. Resp. at 14. However, the Supreme Court's concerns in Gore and State Farm are not raised in the attorney fees context. Unlike some punitive damage awards, attorney fees are generally predictable and, in this case, specifically authorized by Michigan statute and subject to well-defined rules. Attorney fees are calculated by multiplying an attorney's hourly rate by the hours spent litigating a case. Defendants concede that Plaintiffs' counsels' hourly rates are reasonable, and even though they dispute which hours should be included in the fee calculation, they do not dispute that the number of hours spent litigating this case was reasonable. After more than two years of litigation—including discovery, dispositive motions, motions in limine, a full jury trial, and post-judgment motions—the magnitude of the attorney fees Defendants were facing should not have come as a surprise. Therefore, there are no due process concerns raised by the fees sought in this case.

Additionally, even before Gore and State Farm, the Supreme Court refused to adopt a rule that attorney fees under civil rights statutes be proportionate to the underlying damages award.

7

City of Riverside v. Rivera, 477 U.S. 561, 581 (1986) (plurality).[2] As the Sixth Circuit has explained, "the value of the rights vindicated goes beyond the actual monetary award, and the amount of the actual award is not controlling." McHenry v. Chadwick, 896 F.2d 184, 189 (6th Cir. 1990); see also Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, 46 F.3d 1392, 1401 (6th Cir. 1995) (noting that "there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages"). Sixth Circuit "precedents establish that an attorney fee award in a civil rights case is not unreasonable merely because it is greater than the damages awarded to the plaintiff." Waldo v. Consumers Energy Co., 726 F.3d 802, 824 n.5 (6th Cir. 2013). Accordingly, contrary to Defendants' position, Supreme Court (and Sixth Circuit) precedent counsels against reducing attorney fees because they are disproportionate to the underlying damages award.

### 2. Clearly Excessive Fees Under Michigan Law

Defendants also argue that the attorney fees request is excessive in light of the limited success Gibbard obtained on her OMA claim. Resp. at 16.[3] They note that at the beginning of trial, Gibbard sought over $600,000 in damages, but she obtained merely $500 from the claims with attorney fee provisions. Id. at 17. But Defendants needlessly conflate the relief sought. Gibbard may have sought a total of $600,000 in relief on all of her claims, but for the OMA claim,

---

[2] Although Justice Powell concurred only in the Court's judgment, he also rejected a proportionality rule with respect to attorney fees. Id. at 585.

[3] Gibbard argues that under the statutory language, she may be entitled to attorney fees for "bringing this action," Mich. Comp. Laws § 15.273(1), "which includes all claims, not just the OMA claim," Mot. at 2. This argument is obviously flawed. The OMA is not a universal vehicle that can be used to recover attorney fees under theories of liability where neither the state nor federal government has authorized such fees. "[T]he fees charged by a successful litigant under the OMA must be for that action and cannot be unrelated to the OMA claims." Speicher v. Columbia Twp. Bd. of Election Comm'rs, 832 N.W.2d 392, 399 (Mich. Ct. App. 2012).

8

she sought only the statutory maximum of $500 from Keller and Schuette. The question is simply, how successful was she on that recovery? There is some confusion on that matter.

The OMA provides that a public official who intentionally violates the OMA shall be personally liable in a civil action for damages of "not more than $500.00 total, plus court costs and actual attorney fees to a person or group of persons bringing the action." Mich. Comp. Laws § 15.273(1). Although the imposition of "actual attorney fees" under the OMA is mandatory, Speicher v. Columbia Twp. Bd. of Election Comm'rs, 832 N.W.2d 392, 395 (Mich. Ct. App. 2012), Michigan Rule of Professional Conduct 1.5 gives courts the discretion to reduce attorney fees where attorneys are charging "illegal or clearly excessive fee[s]," Zoran v. Twp. of Cottrellville, 913 N.W.2d 359, 362 (Mich. Ct. App. 2017), appeal denied, 919 N.W.2d 403 (Mich. 2018). "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." MRPC 1.5(a). "Because of the high standard contained within MRPC 1.5(a), which is essentially an articulation of the clear-and-convincing-evidence burden of proof, a fee that is slightly—or even moderately—above a reasonable fee cannot be '<u>clearly</u> excessive.'" Id. at 363 (emphasis in original). Rule 1.5(a) sets forth eight factors for courts to consider in deciding if a fee is clearly excessive, of which Defendants address only the fourth factor—"the amount involved and the results obtained."

Defendants assert that Gibbard recovered only half of what was allowed under the OMA, because she recovered only $250 from Keller and Schuette, respectively. Resp. at 6. Gibbard maintains that she made a full recovery because the jury instructions and verdict form arguably only allowed for a total of $500 and the jury awarded $500. Reply at 8-9. Although this is not a

challenge to the jury instruction—which all parties had approved—Gibbard asserts there is some ambiguity in both the instructions and the verdict form.

The jury instructions said that "[t]he total damages may not exceed $500 per Plaintiff, under Plaintiffs' Open Meeting Act claim." The verdict form directed the jury to "enter an actual damages award not to exceed $500 on the appropriate line for any injury giving rise to actual damages." There were separate lines where the jury could award damages for Keller and Schuette immediately below the directions. The jury entered $250 on each line, for a total of $500. Gibbard asserts that, arguably, the jury awarded full relief to her. On the other hand, it may be that the jury awarded half of what was allowed. Nonetheless, where a statute allows no more than $500 for even the most egregious violations of the OMA, even a $250 recovery against each Defendant is significant.

Defendants disagree and revisit their proportionality argument by arguing that, based on Gibbard's level of recovery, the attorney fees should be no more than five times the total damage award. Resp. at 17. Defendants again rely on federal law to support their position that this Court should view this dispute in terms of proportionality. Id. at 16-17. They are mistaken. The federal cases all involve civil rights claims and determining "reasonable attorney fees" through the so-called "lodestar" method.[4] The OMA, unlike civil rights statutes, allows for "actual attorney fees." The term "actual attorney fees" in the OMA creates a mandatory fee, while the term "reasonable attorney fees" in analogous federal statutes creates a discretionary fee scheme. Omdahl v. W. Iron Cty. Bd. of Educ., 733 N.W.2d 380, 390 (Mich. 2007). Despite the fact that the OMA is often

---

[4] Courts calculate the "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers and then adjusting that number up or down based on the unique aspects of the case. Miller v. Caudill, ---F.3d---, 2019 WL 3979593, at *7 (6th Cir. Aug. 23, 2019).

10

read in harmony with federal statutes, "the statutory fee schemes are different and should be interpreted distinctly." Id. Therefore, the federal cases cited by Defendants are not persuasive.

Turning to state law, Defendants rely on Speicher. But that case does not help them as it explains why their proportionality argument is fatally flawed. In Speicher, the court explained that the OMA, as it was enacted in 1968, was largely ineffective due to a lack of enforcement mechanisms and penalties. 832 N.W.2d at 398; see also Booth Newspapers, Inc. v. Univ. of Mich. Bd. of Regents, 507 N.W.2d 422, 427 (Mich. 1993) (same). To remedy the problem, Michigan's Legislature repealed the OMA and reenacted it in 1976 with new provisions that allowed successful parties to recover court costs and actual attorney fees. Omdahl, 733 N.W.2d at 383; see also Speicher, 832 N.W.2d at 398 (noting the same language in section 15.271(4)). Defendants' proportionality argument seeks once again to make the OMA ineffective by capping attorney fees at no more than $2,500. Arbitrarily limiting the actual attorney fees award to no more than five times the recovery is contrary to the plain text of the OMA, the intent of Michigan's legislature, and the private-attorney-general concept upon which statutes like the OMA rely to encourage private litigation to implement public policy.

Accordingly, Gibbard's attorney fees request is not clearly excessive on the theory that they are disproportionate to her recovery. The Court is satisfied that both the amount of recovery and the level of results obtained in this matter are sufficient to warrant full recovery of applicable attorney fees. A lawyer of ordinary prudence would be left with a definite and firm conviction that the requested fees (with deduction for fees unrelated to the OMA claims, as discussed below) in the light of more than two years of litigation are reasonable.

### 3. Fees Unrelated to the OMA Claim

Defendants also argue that Gibbard's fee request is clearly excessive, because she seeks fees related to claims other than her OMA claims. Resp. at 14. They note that Plaintiffs' counsels' billing records do not distinguish between the various claims brought in this case. Id. at 15. They further argue that Gibbard is seeking fees related to Cook's unsuccessful OMA claims. Id. at 16. Gibbard argues that her claims are interrelated and largely involve a common core of facts, namely the events occurring after the October 18, 2016 meeting. Reply at 11. Gibbard has the better part of the argument.

It is difficult to divide attorney time spent on a claim-by-claim basis where, as here, a case arises from a common core of facts. See Hensley, 461 U.S. at 435. The events that transpired on October 18, 2016 certainly gave rise to all of the claims that were presented at trial. Nonetheless, there were events that occurred outside of that night and that were also part of each Plaintiffs' OMA claims. There were also claims brought against other individuals, such as Dave Keller and Ken Brown. Fees for unrelated claims are not available under the OMA. Speicher, 832 N.W.2d at 400. OMA fees are also not available for legal research of unrelated claims. Id. The fees requested in this case are clearly excessive to the extent they include inquiry into areas that fall outside of the common core of facts and legal research unrelated to the OMA claims. Therefore, the Court finds, after reviewing the record, that "a lawyer of ordinary prudence would be left with a definite and firm conviction that the requested fee is in excess of a reasonable fee," to the extent the fees sought are for matters unrelated to Gibbard's OMA claims. See MRPC 1.5(a). Accordingly, Plaintiffs' counsel is directed to review their billing records and make a good faith effort to omit fees unrelated to Gibbard's OMA claims.

**4. Costs**

Finally, Gibbard seeks $4,214.56 in costs. Mot. at 4. Defendants argue that Gibbard's bill of costs is excessive because it includes costs for witnesses who either did not testify at trial or did not testify in relation to Gibbard's OMA claims. Resp. at 18-19. Defendants further argue that the costs should be cut in half, because they should not be responsible for Cook's costs. Id. at 19. They propose that $2,040.49 is a reasonable amount of costs. Id. Gibbard concedes that costs related to one witness, Grant Toner, should be excluded. Reply at 12. Gibbard revised her bill of costs to exclude fees related to Toner, but she also added the cost of ordering trial transcripts to defend against Defendants' Rule 50(b) motion. See Gibbard's 2d Bill of Costs, Ex. 2 to Reply (Dkt. 107-1). She now seeks costs totaling $4,717.06. Id.

The award and allocation of costs in federal courts are controlled by 28 U.S.C. § 1920 and Rule 54(d). Sales v. Marshall, 873 F.2d 115, 122 (6th Cir. 1989). Rule 54 allows the prevailing party to recover costs. Fed. R. Civ. P. 54(d)(1). As noted above, Gibbard is the prevailing party on her OMA claims and, therefore, entitled to costs.

Defendants argue that costs related to trial witness Jeff Talaski should be omitted because he testified as to Shelly Cook only. Resp. at 18. Gibbard does not dispute this point. After reviewing the trial transcript, the Court agrees with Defendants that Talaski's costs should not be awarded, because Talaski's testimony was unrelated to Gibbard's claims.

Defendants argue as to the rest of the witnesses that they testified as to the First Amendment claims and not the OMA claims. Id. at 18-19. However, Defendants do not explain how the testimony on the First Amendment claims and the OMA claims differ in some meaningful way. Based on the Court's review of the bill of costs, Gibbard seeks to recover the filing fee, service of

process fees, transcript fees, and witness fees. Id. at PageID.2663. These fees are all allowed under § 1920. Accordingly, Gibbard is awarded costs in the amount of $4,558.04.

## IV. CONCLUSION

For the reasons stated above, Keller and Schuette's motion for attorney fees (Dkt. 96) is denied and Gibbard's motion for attorney fees (Dkt. 94) is granted in part. Gibbard is entitled to $4,558.04 in costs and most, but not all, of the attorney fees requested. Counsel for the parties are directed to meet and confer and to make a good faith effort to remove billing for matters unrelated to Gibbard's OMA claims. If the parties come to agreement on the matter, they must submit to chambers a proposed stipulated order reflecting that agreement by September 23, 2019. If agreement is not reached, Plaintiffs' counsel must file their revised calculations and supporting documentation with the Court by September 30, 2019, and Defendants may file objections by October 7, 2019.

SO ORDERED.

Dated: September 17, 2019       s/Mark A. Goldsmith
        Detroit, Michigan             MARK A. GOLDSMITH
                                        United States District Judge